PEDRO JUAN SERRALLÉS Y GALIANO, Plaintiff and Appellee, *v.*
RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO,
Defendant and Appellant.

No. 8118.   Argued November 14, 1940.—Decided December 18, 1940.

*George A. Malcolm, Attorney General,* and *R. García Cintrón, Assistant Attorney General,* for appellant.   *Vicente Zayas Pizarro* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Pedro Juan Serrallés y Galiano bought in the United States a vessel which he described thus: "A yacht 85 feet long, of 5½ draught, 16 feet wide, 200 H.P., with two motors, N.Y. Yacht Engine Co. (builders), which was duly registered and licensed in the Port of New York, to be used not only in waters adjacent to Puerto Rico, but also in trips between states and also between other nations . . . ."

The Treasurer of Puerto Rico demanded from Serrallés the payment of an excise tax under subdivision 8, section 16 of the Internal Revenue Law of Puerto Rico, enacted in 1931 (Session Laws, p. 504), as amended by Act No. 108 of May 15, 1936 (Session Laws, p. 566), which reads as follows:

"8. *Self-propelling vehicles and apparatuses and launches and motor boats.*—On all self-propelling vehicles and apparatuses such as automobiles, auto-wagons, trucks, locomotives, tractors, touring-cars, motorcycles (by whatever name known) including chassis, motors, auto-bodies without motors, tanks, batteries, launches with or without motors, motors for same, including out-board motors, and on all parts or accessories for any of the articles herein mentioned, excluding pneumatic tires, inner tubes and solid tires, which are sold, transferred, manufactured, used in, or introduced into Puerto Rico, a tax

of ten (10) per cent on the selling price in Puerto Rico, if the said selling price in Puerto Rico does not exceed one thousand five hundred (1,500) dollars; *Provided,* That on the sale, transfer, manufacture, use in, or introduction into Puerto Rico, of self-propelling vehicles or apparatus, and parts and accessories therefor, described in this section, with the exception of launches and boats, the selling price of which in Puerto Rico exceeds one thousand five hundred (1,500) dollars and does not exceed two thousand (2,000) dollars, the tax shall be twelve and a half (12½) per cent on the selling price; and on the sale, transfer, manufacture, use in or introduction into Puerto Rico of self-propelling vehicles or apparatus, and parts and accessories therefor, described in this section, with the exception of launches and boats, the selling price of which in Puerto Rico exceeds two thousand (2,000) dollars, the tax shall be fifteen (15) per cent on the selling price; *Provided, further,* that persons not residents of Puerto Rico, using their own automobiles for personal use only, shall be exempt from the payment of the tax prescribed by this Act for such period as they shall use a special license of the Commissioner of the Interior. On the expiration of that period or upon acquiring the regular license of the said Commissioner or before, if the automobile is devoted to purposes other than the above-mentioned, the internal revenue tax shall be paid.''

The Treasurer included the yacht within the term ''launch.'' Serrallés refused to pay the said excise tax on the ground that his yacht was not comprised within that classification; but subsequently, after the Treasurer had levied an attachment in order to collect the tax, he paid under protest the sum of $3,441.50, which included the tax, surcharges, interest, and an administrative fine.

After suit was brought in the District Court of Ponce to recover the amount paid under protest, the Treasurer presented a demurrer for insufficiency which was overruled, and then filed his answer. Upon the case being transferred to the District Court of San Juan by an order of this Supreme Court of June 5, 1939 (55 *D.P.R.* 973), the defendant asked the court to render judgment on the pleadings. The lower court did so and entered judgment sustaining the complaint and adjudging the Treasurer to return to the plaintiff the amount of the tax paid, with interest thereon and costs.

Then the Treasurer appealed, and he has assigned two errors:

1. The District Court of San Juan erred in rendering judgment on the pleadings."

The Treasurer urges that his contention is that Mr. Serrallés' yacht is a *launch*, and that this is a question of fact; and, further, that the vessel is not sufficiently described in the pleadings to enable the court to determine, in the absence of evidence, whether the same is a launch.

The appellee on the contrary maintains that the defendant in his answer admitted the first paragraph of the complaint in which the yacht is described in the form copied in the first paragraph of this opinion, and that in the same answer the vessel is mentioned several times under the designation of "yacht."

In the answer of the Treasurer it is not asserted that Mr. Serrallés' vessel is a launch, but that the yacht falls under the classification of "launches" which is made by the Internal Revenue Law. The answer says:

"Of subdivision (*b*), paragraph (4) of the complaint, the defendant denies that the Internal Revenue Law in force in Puerto Rico does not provide any tax on this kind of vessel, and on the contrary alleges that the plaintiff's yacht 'Solana' is covered by the provisions of subdivision 8 of section 16 of the Internal Revenue Law, as amended by Act No. 83 of May 6, 1931, as there is involved either a motor boat or a launch which is specifically subject to the payment of an excise tax under said section."

Therefore, the only question to be decided is the one raised by the appellant in his second assignment of error which says: ". . . . the lower court erred in holding that a yacht is not subject to taxation under the Internal Revenue Law."

In support of his contention the appellant argues: "Assuming that by analogy, in accordance with the decisions in the cases of *Bull Insular Line, Inc.* v. *Sancho, Treas.*, 53 P.R.R. 823 and *Serrallés* v. *Treasurer*, 55 P.R.R.

91, a yacht is not a motor vehicle nor a motor boat, we understand that said vessel is comprised within the term launch." He cites a number of definitions of "yacht" and "launch," both in English and in Spanish; and he cites the case of *The Mamie,* 8 Fed. 367 (1881), where it was held that the yacht "Mamie" was comprised within the classification of "barges" in a federal statute. And lastly he cites the case of *Russell & Co. Sucrs.* v. *Treasurer,* 50 P.R.R. 50, where it was held that a "Gyrotiller," or mechanical plow, was a tractor.

The appellee also copies numerous definitions of the words "yacht" and "launch." He admits that the case of *The Mamie, supra,* holds that a yacht is a barge; but he states that in said case the opinion was rendered by the Circuit Court on appeal from a judgment entered by the U. S. District Court for the District of Michigan. In the opinion by the latter court (5 Fed. 813) the facts are stated in detail. From the text it is clearly seen that the ground on which the lower court relied was that the yacht was devoted to local traffic. The judge said: ". . . I do not undertake to say that pleasure yachts, making long voyages upon the lakes or ocean, may not be within the act, but I think pleasure boats, whether propelled by steam or sail, engaged in purely local navigation, running in and out of the same port, though sometimes carrying passengers for hire, fall within the exception."

The appellee then cites the case of *Serrallés* v. *Treasurer, supra,* where the above-mentioned subdivision 8 was interpreted in connection with airplanes and it was held that an airplane was not a motor vehicle within the purview of the statute; and also *Bull Insular Line, Inc.* v. *Sancho, Treas., supra,* where it was held that a tugboat was not comprised within the classifications "launches" or "boats" of subdivision 8.

In the opinion, delivered by Mr. Justice Wolf, in the last-cited case it was said: "The greater difficulty arises

over the use of the word 'boat.' A tug is clearly not a launch but in its broader sense one could not say that a tug is not a boat." The opinion ends with the following paragraph:

"The principal holding is, however, that the Legislature in using the word 'boat' in the title did not have in mind any and all objects that float on water because it showed the contrary by a specific enumeration. Very frequently it happens that a word of a very general specification is used in a specialized form, but the Legislature was only covering a limited part of a possible field of operation. Then too, while 'boat' may be used to describe a vessel, ordinarily and currently, a 'boat' means a small-sized craft and does not mean a steamboat, or a tugboat, or a canalboat, or even a ship or a yacht. If the Legislature had intended to include a tug it would have been easy to do so in express terms. Both parties have cited authorities which tend to support their respective views, but we think the conclusion follows from the reading of subdivision 8 itself."

From the opinion delivered by the judge of the lower court we copy the following:

"Nor do we think that a *yacht* is a *launch;* in *Bull Insular Line, Inc.* v. *Sancho, Treas. supra,* it was held that a *tugboat* was not a launch. If a *tugboat* is not a *launch,* we fail to see by what effort of the imagination can the conclusion be reached that a *yacht* is such a launch. The two vessels are entirely different in structure, construction, and the use to which they are devoted. The idea suggested by the word *launch* in the usual and ordinary language is that of a small-sized craft, undecked, crossed by pieces of timber which serve as benches for those who operate it and for the passengers. It is mainly used in the service of larger vessels to aid in anchorage operations and in carrying cargo and passengers to such vessels. They are also used for local transportation within harbors and between near points on the coast.

"A *yacht* on the contrary, not only in accordance, with popular language but also in accordance with the definitions set forth in dictionaries and encyclopedias, includes only those private vessels intended for the gratification or pleasure of their owners, and exclusively used for private or official travels or for regattas. It has a deck and cabins; its trips are not merely interportal or coastwise, as they cross oceans, between points far apart, from one continent to

another, often carrying distinguished persons on board, as 'The Mayflower' of the President of the United States. They are so distinct vessels that no one will think of a *yacht* when the term *launch* is mentioned to him.''

We agree with the reasoning and findings of the lower court and are of the opinion that the judgment appealed from should be affirmed.